The defendant, Darryl McClure, appeals from his convictions on charges of violating an abuse prevention order, see G. L. c. 209A, § 7, intimidation of a witness, see G. L. c. 268, § 13B, and carrying a dangerous weapon, see G. L. c. 269, § 10 (b ).[2]
1. The defendant's first argument is that the judge erred in not allowing his motion for a required finding of not guilty on the charge of intimidation of a witness. In particular, the defendant argues that the Commonwealth failed to prove that the defendant acted wilfully to intimidate or to mislead his mother not to testify against him, and that he did so with the specific intent to interfere with her participation as a witness at his trial. "The purpose of the statute, rather obviously, is to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings." Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 799 (1998).
Here, the evidence was that while he was in jail awaiting trial, the defendant learned that his mother, whom he had not seen for many years, had identified him as the robber from a surveillance video recording and still images. The defendant believed that his mother was a very important potential witness because he did not believe the victim would be able to identify him. The defendant telephoned and sent letters to his former girl friend asking her to contact his brother to ask him to tell their mother "not to come to trial." The evidence showed that the defendant's brother contacted their mother and explained that the defendant did not want her to identify him and that she should tell the police that "it wasn't [the defendant]." The defendant arranged for his requests to be relayed to his mother after he had been served with a restraining order that barred him from having any contact with his mother. When his mother received the defendant's request, she became nervous and contacted the police. She testified, "I was frightened that maybe someone would come to my door and say something to me." It was a reasonable inference from the defendant's conduct that he acted wilfully to interfere with his trial by putting his mother in fear of testifying against him.
"The assessment whether the defendant made a threat is not confined to a technical analysis of the precise words uttered[;] ... the jury may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances." Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 613 (2007), quoting Commonwealth v. Sholley, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001). The Commonwealth is not required to prove an "overtly threatening" (citation omitted) act. Commonwealth v. Perez, 460 Mass. 683, 703 (2011). Certainly, his mother's reaction to his instruction from jail in violation of the restraining order (i.e., "frightened") lends support to the inference that the statement the defendant directed others to deliver to his mother was a threat. Because the jury were warranted in finding that this threat was intended to achieve the ultimate goal of preventing his mother from testifying at trial, the intimidation prong of G. L. c. 268, § 13B, is satisfied. The sufficiency of the evidence on this prong is such that we need not reach the misleading prong of § 13B.
2. With regard to the conviction of carrying a dangerous weapon, the Commonwealth concedes that the judgment should be vacated because the judge did not instruct the jury that in the case of a weapon that is not dangerous per se,[3] such as the folded pocket knife involved in this case, the jury must find beyond a reasonable doubt that as used by the defendant, the weapon was capable of causing serious bodily injury. See, e.g., Commonwealth v. Bradshaw, 86 Mass. App. Ct. 74, 81-82 (2014). However, the defendant's argument goes further. The defendant contends that the discovery of a folding pocket knife with a dime wedged in it in the lining of the defendant's shorts during the booking process, which took place at the police station, is not sufficient, as a matter of law, to support a finding by the jury that the defendant made use of the knife in a manner that could cause serious bodily injury. We agree. "[F]olding knives typically are not regarded as dangerous weapons, at least while unopened." Commonwealth v. Allen, 76 Mass. App. Ct. 9, 12 n.5 (2009). There was no evidence indicating that the knife had been hidden by the defendant in the lining in such a way that the defendant was capable of ready access to it with the blade in the open position. In fact, there was no evidence that the defendant was even aware of the presence of the knife in the lining of his shorts. In these circumstances, the evidence did not permit the jury to find that the pocket knife was a dangerous weapon.
3. During her redirect examination of the defendant's mother, the prosecutor asked a brief series of questions about how she (the mother) had been treated by the prosecutor and the police. The mother replied "[p]rofessionally." We agree with the Commonwealth that this brief exchange was entirely appropriate as it was relevant to rebut the suggestion by the defense that the defendant's mother had been pressured into making an identification.
4. The defendant objects to several portions of the prosecutor's closing argument. First, the argument that the defendant's testimony that he did not have a bicycle and did not borrow a bicycle mattered "very little" was not a veiled effort to claim that the defendant had stolen a bicycle, but rather a fair rebuttal of the defendant's faulty logic that this must be a case of mistaken identity because the robber fled the scene on a bicycle and the defendant did not own or borrow one that day. The prosecutor also argued that it was "difficult" for the defendant's brother and mother to come to court to testify and that "[t]hey're good people." These comments should not have been made and constitute error on the part of the prosecutor because they could have been understood as an expression of the prosecutor's belief in the credibility of the witnesses. See Mass. G. Evid. § 1113(b)(3)(B) (2018). Also, it was error for the prosecutor to comment that the defendant "is indeed a criminal. You can hear it in his voice and in his recorded calls." Assertions by prosecutors as to the credibility of witnesses or the guilt of the accused are impermissible. See Commonwealth v. Chavis, 415 Mass. 703, 713 (1993). Nonetheless, upon a consideration of the trial in its entirety, neither this erroneous comment, nor the others made by the prosecutor, which were not the subject of an objection, rise to the level of creating a substantial risk of a miscarriage of justice, especially when we consider that this is a case in which there is strong evidence of the defendant's guilt.
5. For the above reasons, we vacate the judgment on the charge of carrying a dangerous weapon, set aside the verdict, and order that judgment enter for the defendant. The remaining judgments are affirmed.[4]
So ordered.
Vacated in part and set aside; affirmed in part.

The defendant does not appeal from his conviction of armed robbery, see G. L. c. 265, § 17A, to which he pleaded guilty.

"Straightness of a blade, like its length, a locking mechanism, a serrated edge, or any other individual feature is not dispositive of the question whether a knife is dangerous per se under the common law. Rather, the question is whether the knife is designed for the purpose of bodily assault or defense and to produce death or great bodily harm, or whether it has some other useful purpose and is only dangerous when used in a dangerous fashion" (quotation marks and citations omitted). Commonwealth v. Wynton W., 459 Mass. 745, 754 n.5 (2011).

Remand for resentencing is unnecessary.